IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| Michael Couch<br>    An individual,<br><br>    Plaintiff,<br><br>v.<br><br>(1) Sheet Metal Workers International<br>    Association,<br>        A labor organization<br>(2) Sheet Metal Workers Local 270,<br>        An Oklahoma labor union,<br>(3) David Johnson<br>        Individually and in official<br>        Capacity of Business Manager<br><br>    Defendants. | Case No.: 14-CV-92-SPS |

## COMPLAINT

Comes Now, Plaintiff, Michael Couch, by and through counsel and for his causes of action and states as follows:

1. Michael Couch is a resident of the state of Oklahoma within the venue of this court.

2. Sheet Metal Workers International Association ("International" or "IA") is a labor organization doing business within the venue of this Court with, through, and by its affiliated Local Number 270.

3. Sheet Metal Workers' Local 270 ("Local 270" or "LU 270") is a labor organization with its principle place of business within the venue of this court.

1

4. David Johnson is a resident of the state of Oklahoma. David Johnson is currently, and has been since April 2010, the Business Manager for the Sheet Metal Workers Local 270 ("Local 270") in Tulsa Oklahoma.

5. Michael Couch was employed as the duly elected Business Manager of Local 270 during the 2006- 2009 period.

6. In approximately April 2010, Couch resigned his employment and elected positions with Local 270 to become employed as an organizer with the Sheet Metal Workers International Association, the parent union to Local 270. However, Plaintiff remained a member of the IA and of Local 270 after April 2010 until March 2012.

7. During the entire period of Plaintiff's employment no employee or official of Local 270 ever raised or suggested any improper financial transactions by Plaintiff, including none by any of the Defendants.

8. On or about January 20, 2012, David Johnson filed "charges" against Plaintiff under the Sheet Metal Workers International Constitution and Ritual, 2009 version. Such charges alleged improper financial accounting procedures while Couch was Business manager between 2006-2009.

9. Prior to January 20, 2012, Plaintiff exercised his union political free speech rights, provided by the IA Constitution and 29 USC § 411, including running for political office against Dave Johnson, being critical of Johnson's activities as a union marketing director/organizer, and of Johnson's activities and performance as

Business Manager of LU 270. Defendants were aware of Plaintiff's union free speech activities.

10. Prior to January 20, 2012, Plaintiff exercised his union political free speech rights and objected to, and effectively preventing, David Johnson and LU 270 from securing a full time marketing director, also known as an organizer, fully paid by the International Union. The individual holding such position was and is Mike Carper. Johnson and LU 270 knew Plaintiff was responsible for the denial of their request prior to Johnson's charges of January 20, 2012.

11. Prior to January 20, 2012, Plaintiff exercised his union political free speech rights and was critical of various policies and practices of Johnson as Business Manager. This includes without limitation criticisms and complaints of Johnson entering into less favorable contracts with various insurance related providers of LU 270 which provided less benefits at higher costs that what was previously negotiated with the providers.

12. Defendant's January 20, 2012 union charges were based on evidence and testimony provided by Karen Carper, the mother of LU 270 Marketing Director Mike Carper (who Plaintiff had prevented from being fully paid for by the IA), testimony and evidence of Mike Carper, and testimony and evidence from IA International Representative Tim McGrath.

13. Prior to January 20, 2012, McGrath was a former Business Manager from a Texas Sheet Metal Workers Local. McGrath had campaigned and sought to be elected to a specific, desirable, and high ranking union position and President of the

3

Southwest District Council of the IA. Plaintiff opposed McGrath for the position, openly campaigned for a different candidate, and was part of a group of candidates opposing and running against the group of candidates or "slate" organized and promoted by McGrath. McGrath and his slate lost the election. The position being sought was held by Richard Loyd of Louisiana. Loyd backed and supported McGrath to be elected as his successor. The candidate backed and supported by Couch was successful in being elected to the President position sought by McGrath. Plaintiff was elected Vice-President of the group and defeated the candidate backed and promoted by McGrath. Following this election McGrath swore to Plaintiff "someday I'll get you for this."

14. As of January 20, 2012, and all other material times. McGrath was an International Association Representative assigned to assist, monitor, and supervise LU 270 in Tulsa. McGrath actively encourage, instigated, caused, procured, and sought the January 20, 2012 union charges against Plaintiff.

15. On December 9, 2011, IA President Joe Nigro advised Plaintiff of some of the nature of the accusations against him. Nigro promised Plaintiff he would have full access to any records needed to clear himself and to respond to the accusations.

16. In December 2011, despite numerous requests, LU 270, Johnson, McGrath and the IA failed, refused, and did not provide numerous records requested by Plaintiff to respond to the accusations and to prepare a defense to the charges. Defendants provided Plaintiff a total of 12 hours, two days of six hours each, to review and analyze tens of thousands of pages. Literally, Defendants did a document dump of

some six large plastic tubs and some eight bankers' boxes of records, along with other boxes of records, for Plaintiff to sift and sort through to try to respond to the charges. The records were not organized, nor sorted into what materials may relate to what charge. Defendants had notes books of records prepared which specifically related to the charges against Plaintiff, but refused to permit Plaintiff to review them. Of the records which Defendants did provide, Defendants made only partial copies of certain requested records. Defendants delivered these in a jumbled, disorganized fashion as if they were purposefully dropped, scattered, and then picked up. Defendants then imposed high barriers to any other copies by mandating Plaintiff by outrageous copy cost for records. Plaintiff requested numerous other specific records to respond to the charges which were never provided by Defendants.

17. Defendants failed and refused to permit Plaintiff to search for necessary records at the LU 270 union hall. Defendant failed and refused to permit Plaintiff to have access to on-line and electronically stored records, including financial transaction records of LU 270 to respond to the charges.

18. Defendants knowingly, purposefully, and intentionally hid, concealed, and destroyed records which could exonerate Plaintiff and assist in his defense. As an example, Defendant's charged Plaintiff with using the LU 270 credit card and not keeping copies of receipts showing the transaction details and purposes. However, Plaintiff had retained and provided copies receipts of credit card transactions made on behalf of Local 270. Plaintiff was required to leave such receipts at Local 270

when his employment ended under the custody and control of Defendants. Defendants, who had sole custody over such records, claimed to not have such records. Defendants either destroyed or concealed the exonerating records. As another example, the dues transactions of LU 270 were maintained in a special computer database known as "Windues." Defendants refused to permit Plaintiff access to the program, or even a copy of the database.

19. While Plaintiff was Business Manager hard copy printouts of transactions from the database existed. Plaintiff was provided some of these printouts, which demonstrated significant inconsistencies to the charges against him. Plaintiff requested copies of numerous other database printouts of other reports which were not produced.

20. During the February 8-9, 2012 "hearing" Defendants claimed to have destroyed a number of the requested printouts of the requested records prior to the January 23, 2013 charges being made, but during the period of their compiling records to make the charges.

21. On or about January 20, 2012, IA President Nigro appointed the three individuals to serve as the trial board members making the decision on the charges against Plaintiff. The trial board members were biased against Plaintiff and in favor of Defendants. Indeed, the Chairman of the Board was Richard Loyd, who had supported McGrath for the special elected position he sought and against whom Plaintiff had campaigned against for the position. Loyd was a union political supporter and proponent of Nigro and of McGrath and against Plaintiff. Loyd was

6

part and parcel of the McGrath group Plaintiff opposed for the election. McGrath was part of the "prosecution" team against Plaintiff at the Trial Board Hearing and testified against Plaintiff. Chairman Loyd was biased against Plaintiff and failed to provide a fair, neutral, or independent tribunal.

22. On information and belief, based on past examples, the IA instructed members of the Trial Board to reach a predetermined decision and result.

23. On or about February 8-9, 2012 the Trial Board hearing was conducted, although it was biased, unfair, predetermined, and failed to provide minimum protection mandated by due process. Plaintiff unsuccessfully sought a postponement of the trial board to secure necessary and requested records, but was denied.

24. Prior to the Trial Board, Plaintiff was not provided a list of witnesses or potential testimony of witnesses to prepare. Plaintiff was not provided copies of documents which might be exhibits at the hearing to be able to prepare. Plaintiff was denied the right to counsel during the hearing, although Defendants had counsel at the hearing and advised them on breaks during the hearing.

25. At the hearing, Defendants radically changed the nature and details of the accusations against him. As an example, Defendant's had previously provided four pages of excel spread sheet summary as basis their allegations of missing cash from dues collections. Plaintiff had previously partially responded to the IA detailing why the methods and results of this summary analysis were not accurate. At the hearing, Defendants radically revised, edited, modified, and changed the results and methods used to accuse him without providing any underlying records

7

to support the accusations or computations. Plaintiff was fundamentally denied a fair hearing with such ambush tactics. Plaintiff was not provided the revised summary spread sheets before the hearing.

26. At the hearing some witnesses testified by affidavits, which was against the Trial and Appeal rules of Defendant and which denied Plaintiff the right to cross examine the witnesses.

27. On or about March 9, 2012 Defendant's internal Trial Board mailed Plaintiff a decision fining Plaintiff $76,408.00. Such decision failed to provide any findings of fact or legal conclusions to support its decision or analysis. Such decision was a farce.

28. Plaintiff timely appealed the decision on May 7, 2012 pursuant to the IA Constitution and Ritual to the IA General Executive Council, including arguments and exhibits in support of his appeal.

29. On September 5, 2012 the IA General Executive Council issued an interim decision on the appeal. On March 21, 2013, the IA GEC issued a final decision revising the initial Trial Board decision and the September 5, 2012 decision claiming a total of $46,758.

30. Plaintiff brings this action within two years of his notice of the Trial Board decision and his exhaustion of internal union procedures.

## Count 1: LMRDA Improper Trial Board

31. All other paragraphs are incorporated herein.

32. The Labor Management Reporting & Disclosure Act, 29 U.S.C § 411 (a) (5), provides:

    No member of any labor organization may be fined, suspended, expelled, or otherwise disciplined except for nonpayment of dues by such organization or by any officer thereof unless such member has been **(A) served with written specific charges; (B) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing**

33. Defendants fined, suspended, expelled, and disciplined Plaintiff in violation of the LMRDA. He was not provided specific written notice of the charges, was not given a reasonable period of time to prepare his defense, and was not afforded a full or fair hearing.

34. Defendants' notice of the charges against Plaintiff was vague, overly broad, and not specific or detailed enough to prepare the defense thereto. Indeed, the nature and specifics of the accusations were dramatically changed, without notice, during the hearing.

35. Defendants provided Plaintiff from his receipt of the January 20, 2012 notice until February 8, 2012, less than 18 days, to prepare for a hearing over volumes of individual financial transactions over a more than three year period. He was denied access to records used to prosecute the charges against him. He was denied access to records to exonerate himself.

36. Defendants denied Plaintiff a full or fair hearing. The Chairman of the Trial Board was biased against him and assisting in a political vendetta against Plaintiff. Plaintiff was not provided any notice of witnesses to be called against him or of

9

even a summary of what their testimony might be. Plaintiff was not provided copies of any exhibits or documents to be used against him. Plaintiff was denied the right to counsel. Plaintiff was denied the right to access financial records to exonerate himself. Records to exonerate Plaintiff was hidden and destroyed. Computer records were altered and re-run in a format never provided to Plaintiff. Plaintiff was denied the right to cross examine his accusers as to their changing of the financial accusations against him, why the records were altered, how they were altered, and to demonstrate the falsity of the accusations against him based on the alteration and manipulation of the financial records.

37. As a direct and proximate result of Defendants conduct, Plaintiff was disciplined, fined, expelled, and suspended from union membership and ordered to pay money in violation of the LMRDA.

## Count 2: LMRDA Retaliation

38. All other paragraphs are incorporated herein.

39. The LMDRA section 101(a)(2), 29 USC § 411(a)(2) guarantees members with freedom of expression and political rights, providing in part:

   Freedom of speech and assembly. Every member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions; and to express at meetings of the labor organization his views, upon candidates in an election of the labor organization or upon any business properly before the meeting, subject to the organization's established and reasonable rules pertaining to the conduct of meetings

40. The LMRDA Section 101(a)(1), 29 USC §411(a)(1) guarantees "every member of a labor organization shall have equal rights and privileges within such

10

organization to nominate candidates, to vote in elections or referendums of the labor organization, to attend membership meetings, and to participate in the deliberations and voting upon the business of such meetings." 29 U.S.C. § 411(a)(1).

41. Prior to January 20, 2012, Plaintiff engaged in protected activities under the LMRDA by engaging in free speech activities concerning union matters, including objecting to and causing LU 270 to not secure IA funding for a full-time paid organizer and by criticizing Johnson's failure to properly negotiate terms, conditions and prices for insurance benefit contracts thereby costing the LU membership money.

42. Prior to January 20, 2012, Plaintiff engaged in protected activities under the LMRDA by engaging in political activity, including running against, and beating, Johnson for the elected position of Business Manager of LU 270 and by successfully running against, campaigning against McGrath and his slate of candidate for the International Southwest District Council President position. Indeed, Couch was elected Vice-President of the Council over McGrath and Loyd's candidate.

43. Plaintiff's protected speech and political activities were motivating factors and are causally connected to McGrath and Johnson instituting internal charges against Plaintiff, in depriving him of a fair hearing, and in causing his expulsion, suspension and fines by the Trial Board.

44. As a direct and consequent result of the Defendants' action, which was known to and foreseeable by them Plaintiff was terminated from his position of employment as an International Organizer with the SMWIA. The IA has a rule requiring union membership, including payment of dues to a Local, in order to be employed in such position.

45. As a direct and proximate result of the retaliation against Plaintiff, he has and will continue to suffer economic loss, emotional distress, reputation damage, and the imposition of illegal fines and membership suspension.

## Count 3: LMRA § 301 Breach of Contract

46. All other paragraphs are incorporated herein.

47. The International The SMWIA Constitution Article 18 § 1(b) is exceptionally clear that all charges "shall be in writing and filed by the charging party not later than ninety (90) days after his or her knowledge of the alleged offense.(except in strike situations).

48. Section 301 of the Labor Management Relations Act prohibits violations of "contracts between labor organizations. 29 U.S.C. § 185(a). The terms of the International Constitution create contractual obligations under 29 USC § 185 between the Union and a union member.

49. Dave Johnson was aware of the accusations used to support his January 20, 2012 charge against Plaintiff more than 90 days prior to such charges. Defendants LU 270 and IA were aware of Johnson's knowledge in violation of the IA 90 day rule.

50. Defendants breached the International Constitution by imposing discipline, fines, and suspensions on Plaintiff based on alleged conduct which allegedly occurred years prior to the charge date of January 20, 2012, and more than 90 days prior to Johnson's admitted knowledge of such allegations.

51. The IU Constitution further provides that Plaintiff was entitled to a full and fair hearing by the Trial Board. Defendants breached such contractual obligations by failing to provide a full, fair, neutral hearing board as described herein.

52. As a direct and proximate result of Defendant's breach, Plaintiff has and will continue to suffer economic loss, emotional distress, and the imposition of illegal and improper fines and discipline.

**Remedy**

53. As a direct and proximate result of Defendant's conduct as described herein, Plaintiff has and will continue to suffer economic loss, emotional distress, loss of reputation, and damages in an amount in excess of $75,000.00, excluding interest, costs, and attorney fees.

54. Plaintiff has and will continue to wrongfully suffer expulsion from union membership, and union office, or union employment, or trust fund employment for a period of five years. Plaintiff has and will continue to suffer demand for repayment of funds, fines, and moneys in an amount in excess of $75,000.

Wherefore, premises considered, Plaintiff prays for judgment to be entered on his behalf and against each Defendant, individually, jointly, and severally, in an amount in excess of $75,000.00, together with interest, costs and attorney fees, along with full

reversal and expungement of the internal union charges against him, the Trial Board decision, and injunctive relief to restrain and prevent Defendants from attempting to enforce, collect, or inform others of the terms, conditions, basis of, or results of the charges or decisions of the internal union trial board. Plaintiff further requests any and all other legal or equitable relief to which he is entitled.

Jury Trial Demanded

Attorney Lien Claimed

          Respectfully Submitted,

          s/ Loren Gibson

          Loren Gibson, OBA 14348
          Gibson & Associates, P.L.C.
          105 N. Hudson, Suite 312
          Oklahoma City, OK 73102
          405/270-0900
          405/270-0903 (fax)
          Counsel for Plaintiff